No. 23-2019
_____

# United States Court of Appeals
## For the Fourth Circuit
_____

**ROBERT D. WHITTAKER, III**

**Plaintiff-Appellant**

v.

**HOWARD COUNTY, MARYLAND**

**Defendant-Appellee**
_____

**On Appeal from the United States District Court for the District of Maryland**
**The Honorable Beth P. Gesner, Presiding**
**Case No. 1:21-cv-02108-BPG**
_____

**REPLY BRIEF FOR THE APPELLANT**
_____

Abdullah H. Hijazi
HIJAZI & CARROLN, P.A.
3231 Superior Lane, Suite
A-26 Bowie, Maryland
20715 (301)'464-4646
(phone)(301)'464-4188 (fax)"
Ahijazi@hzc-law.com"
*Attorney for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... i

INTRODUCTION ..............................................................................1

ARGUMENT ....................................................................................4

I. MR. WHITTAKER ESTABLISHED A PRIMA FACIE CASE AND
DEMONSTRATED PRETEXT ....................................................4

    A. The District Court Erred In Holding That There Is No Genuine Issue Of
Material Fact As To Mr. Whittaker's Prima Facie Case .........................4

    B. The District Court Also Erred In Holding That There Is No Genuine
Dispute Of Material Fact As To Pretext....................................9

        1. Mr. Whittaker's Performance ..........................................10

        2. Defendant's Changing Reasons for Termination ...........................10

        3. Defendant's Demerit System ........................................13

    C. Defendant Did Not Dispute At The District Court Level That Mr.
Whittaker's Job Remained Open. ..........................................15

    D. The District Court Erred in its Similarly Situated Analysis .................16

II. MR. WHITTAKER PROVIDED DIRECT EVIDENCE BELOW THAT
DEFENDANT HAS A CORPORATE CULTURE THAT IS AVERSE TO
OLDER TRAINEES......................................................................18

CONCLUSION ................................................................................24

CERTIFICATE OF COMPLIANCE....................................................26

CERTIFICATE OF SERVICE............................................................27

# TABLE OF AUTHORITIES

*Arlicia Gosby v. Apache Indus. Servs.*, 30 F.4th 523 (5th Cir. 2022) ......................14

*Bandy v. City of Salem, Virginia*, 59 F.4th 705 (4th Cir. 2023) ........................ 21, 23

*Brinkley v. Harbour Recreation Club*, 180 F.3d 598 (4th Cir. 1999) ....................20

*Burns v. AAF-McQuay, Inc.*, 96 F.3d 728 (4th Cir. 1996) ....................................20

*Duvall v. Novant Health*, Inc., 95 F.4th 778 (4th Cir. 2024)..................................12

*Ford v. Berry Plastics Corp.*, No. RDB-12-0977,
    12013 U.S. Dist. LEXIS 138948 (D. Md. Sep. 27, 2013)..................................15

*Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281 (4th Cir. 1985.........................15

*Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991).......................................................13

*Hawkins v. PepsiCo, Inc.* 203 F.3d 274 (2000)........................................................4

*Haynes v. Waste Connections, Inc.*, 922 F.3d 219 (4th Cir. 2019).............6, 8, 10, 11

*Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562 (4th Cir. 2015)..........11, 19, 25

*Loveless v. John's Ford, Inc.*, 232 F. App'x 229 (4th Cir. 2007) .............................6

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289 (4th Cir. 2010) .............18

*Neufeld v. Searle Lab'ys*, 884 F.2d 335 (8th Cir. 1989) .........................................24

*O'Connor v. Consolidated Coin Caterers Corp.*,
    56 F.3d 542 (4th Cir. 1995) .........................................................................22

*Page v. Bolger*, 645 F.2d 227 (4th Cir. 1981) .......................................................15

*Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016).......................24

*Ruiz v. County of Rockland*, 609 F.3d 486 (2d Cir. 2010) ......................................15

*Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643 (4th Cir. 2021) ............... passim

*Thompson v. UHHS Richmond Heights Hosp., Inc.*,
    372 F. App'x 620 (6th Cir. 2010) ..................................................................24

*Tuttle v. Metropolitan Government of Nashville*,
    474 F.3d 307, 320 (6th Cir. 2007) ..................................................................21

*Wesley v. Arlington County*, 354 Fed. App'x. 775 (4th Cir. 2009) ..........................14

*Westmoreland v. TWC Admin. LLC*, 924 F.3d 718 (4th Cir. 2019) ................ 20, 24

i

## **INTRODUCTION**

In the court below, Mr. Whittaker demonstrated: 1) he was over 40 years old when he began his firefighter training for Defendant; 2) Defendant terminated him; 3) Defendant certified him as passing every stage of his licensure training; and 4) Defendant treated younger trainees more favorably than Mr. Whittaker.

This Circuit's precedent is clear that the plaintiff's burden of establishing a prima facie case to avoid summary judgment on an ADEA claim is not onerous. Moreso, a court must view the facts in the light most favorable to Mr. Whittaker as the non-moving party. Although Mr. Whittaker's case is strong enough to support a jury verdict or judgment on the merits, Mr. Whittaker is not held to that standard at the summary judgment stage, whether below in the District Court or before this Circuit. To find in Mr. Whittaker's favor, there only needs to be at least one genuine dispute regarding one issue of material fact concerning his claim. It is quite telling that instead of focusing on issues of law, Defendant's response brief (Appellee's Brief) heavily focuses on issues of fact and tries to controvert every factual assertion in Mr. Whittaker's brief with competing <u>factual</u> evidence. This, in itself, confirms that the District Court erred in finding that there were no material facts in dispute.

Below are just a few examples where Mr. Whittaker presented material facts before the District Court:

| Issue | Plaintiff's Evidence |
|---|---|
| *Mr. Whittaker's performance during training* | • **JA0250-51** (showing that he passed the written test, the Candidate Physical Agility Test, the panel interview, the background check, the psychological examination, and the physical examination process)<br><br>• **JA0984-89** (showing completed and passed all required examinations and requirements at each stage of the fire academy) |
| *Insubordination as a pretext basis for Mr. Whittaker's Termination* | • **JA0982-93; JA1191-92** (two memoranda from Defendant informing Mr. Whittaker of his termination, neither of which includes or mentions insubordination as a basis)<br><br>• **JA1119** (Defendant's corporate designee deposition testimony stating that Mr. Whittaker was fired for alleged deficient performance) |
| *Defendant's treatment of younger, similarly situated trainees* | • **JA1009-10** (showing a younger trainee was given multiple opportunities to retry drills but was not terminated, whereas Mr. Whittaker was written up after not passing one drill on his first try even though he passed it on the second try).<br><br>• **JA1020; Ex. 13 to Pl.'s Response to Def.'s Mot. for Summ. J.** (showing that Defendant allowed another younger trainee to remain in class and keep his books after sustaining an injury, whereas Mr. Whittaker was not). |

However, the District Court simply overlooked or ignored these material facts when granting summary judgment. This is a reversible error. For example,

regarding an employee's performance, this Circuit has repeatedly reversed grants of summary judgment where evidence shows—as it does here—that the plaintiff was performing at a satisfactory level (which can also be evidence of pretext) at the time of the adverse employment decision, notwithstanding a defendant's a competing account of employee's performance. The District Court also disregarded evidence of pretext, evidence showing that Defendant treated younger employees more favorably, and evidence demonstrating ageist views among Defendant's employees.

In sum, Mr. Whittaker established a prima facie case and presented substantial evidence showing that he was discriminated against because of his age, that Defendant treated younger employees more favorably, and that Defendant's alleged justifications for terminating Mr. Whittaker are false and impermissible post-hoc rationalization. Based on this evidence, the trier of fact could easily conclude that Defendant unlawfully discriminated against Mr. Whittaker. However, in granting summary judgment, the District Court usurped the factfinder's role. For the reasons stated in Mr. Whittaker's opening brief and further explained below, this Circuit should reverse the District Court's ruling.

# **ARGUMENT**

## I. MR. WHITTAKER ESTABLISHED A PRIMA FACIE CASE AND DEMONSTRATED PRETEXT

### A. The District Court Erred In Holding That There Is No Genuine Issue Of Material Fact As To Mr. Whittaker's Prima Facie Case

Defendant contends that Mr. Whittaker's *prima facie* case fails because the evaluation of his work performance is based on Mr. Whittaker's "own assessment." Appellee's Br. at 20. To support this notion, both the District Court and Defendant rely on this Circuit's decision in *Hawkins v. PepsiCo, Inc.* 203 F.3d 274 (2000) to assert that "Mr. Whitaker's efforts to rebut [Defendant's] assessment of his personal do nothing more than show that he and [Defendant] 'did not see eye-to-eye'" and "'this showing of a difference of opinion' cannot reasonably support the conclusion that Mr. Whitaker's discharge was motivated by discriminatory animus." *Id.* at 37 (quoting *Hawkins*, 203 F. 3d. at 281). The District Court accepted this contention without scrutiny and simply held that Mr. Whittaker's affidavit "is insufficient to generate a genuine dispute of material fact" on whether his performance met the Defendant's legitimate expectation. JA0029. This is both legally and factually erroneous.

To start, Defendant's reliance on *Hawkins* is misplaced. In *Hawkins*, this Circuit observed that "the plaintiff, instead of producing evidence that shows [the supervisor's] assessment of her performance was dishonest or not the real reason for

4

her termination -- as the law requires -- *Hawkins dispute[d] the merits of [the defendant's evaluations*." *Hawkins*, 203 F. 3d. at 280 (emphasis added). However, as shown in his opening brief with citations to the record, Mr. Whittaker does not rely on his own assessments:

> Mr. Whittaker satisfactorily made his way through each stage of the program, was objectively qualified, and was certified each step of the way, including all the way through Firefighter I and the more complex Firefighter II. JA984-989; JA266. **Indeed, Defendant certified Mr. Whittaker as qualified every step of the way**. Mr. Whittaker completed and passed all required examinations and requirements at each stage of the fire academy, including Emergency Vehicle Operator, Ice Rescue Operations, Emergency Medical Technician (EMT), Fire Dynamics Seminar, Firefighter I, and Firefighter II. JA984-989.

Appellant's Br. at 14 (emphasis in original).

Indeed, "**Defendant conceded that Mr. Whittaker passed all objective criteria to proceed through the academy and become a firefighter**." Appellant's Br. at 4 (citing JA266 (emphasis in original)). Unlike the plaintiff in *Hawkins*, Mr. Whittaker does not solely rely on his own assessment to show that he met Defendant's legitimate expectations. Instead, Mr. Whittaker supplied evidence that Defendant actually believed his performance was good. *Hawkins*, 203 F. 3d. at 279.[1]

---

[1] The District Court also agreed with Defendant's reliance on *Hawkins* for the proposition that only the employer's perception is relevant in the context of a plaintiff's prima facie case. *See* JA0030. In doing so, the District Court refused to consider the opinions of Mr. Whittaker's fellow trainees concerning his work performance. But this Circuit has questioned whether this approach is correct. *See Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 650 (4th Cir. 2021) ("[A]lthough we have

Moreover, subsequent decisions from this Circuit further demonstrate that Defendant's argument is incorrect. This Circuit has repeatedly held that "evidence showing that the plaintiff was performing at a satisfactory level is sufficient to survive summary judgment." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643 (4th Cir. 2021); *see also Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019); *Loveless v. John's Ford, Inc.*, 232 F. App'x 229 (4th Cir. 2007).

In *Loveless*, this Circuit reversed a judgment as a matter of law entered against the plaintiff's ADEA claim. 232 F. App'x at 235. The issue in *Loveless* was whether the plaintiff established that he was performing his duties at a level that met the employer's legitimate expectations at the time of his discharge. *Id.* at 234-35. The evidence showed that the plaintiff received positive reviews, certifications, and awards while employed by the defendant. *Id.* at 235. The Court held that "the evidence in this case, viewed in the proper light, established that Loveless was performing his duties at a level that met [the defendant's] legitimate expectations when he was fired." *Id.* This Circuit observed that "[a]lthough [the defendant] presented the jury with a competing account of [plaintiff's] performance, we are, in assessing this contention, obliged to view the evidence in the light most favorable to

---

held that we must focus on the employer's perception in the context of the pretext stage, w*e have not so held with respect to a plaintiff's prima facie case.*" (emphasis added)). Accordingly, the District Court erred in rejecting the testimony of Mr. Whittaker's fellow trainees who often worked with him and never saw any deficiencies in Mr. his performance. *See* Appellant's Br. at 6 (citing JA0658; JA0683; JA0703-05; JA0725-26; JA0811; JA0837-39).

[plaintiff]." *Id.* The Court rejected the contention that the plaintiff failed to establish a prima facie case of age discrimination under the ADEA and concluded that "a reasonable jury was entitled to find that the [plaintiff] was, at the time of his discharge, performing his duties at a level that met [the defendant's] legitimate expectations." *Id.*

In *Haynes*, this Court held that a plaintiff had "raise[d] the reasonable inference" that he was performing at a satisfactory level based on evidence that the employer gave the plaintiff bonuses and told him mere weeks before his termination that "everything looks good" and he had "nothing to worry about." 922 F.3d at 225. In response to the defendant's contentions that the plaintiff's work performance did not meet expectations, this Circuit responded that "a dispute of fact would still exist as to whether Haynes met his employer's legitimate expectations at that time, because evidence in the record suggests that Haynes" did perform satisfactorily. *Id.*

More recently, this Court reiterated that a plaintiff need not "show that he was a perfect or model employee. Rather, a plaintiff must show only that he was qualified for the job and that he was meeting [the] employer's legitimate expectations." *Sempowich*, 19 F.4th at 650 (quoting *Haynes*, 922 F.3d at 225). In *Sempowich*, the plaintiff presented evidence that she received highly positive performance reviews, awards, and a pay raise. Citing *Haynes*, this Circuit observed that it "previously held that similar evidence was sufficient to survive summary judgment." *Id.* The

*Sempowich* Court stated: "Our holding is simple — a court cannot grant a party summary judgment when there are genuine issues of material fact, and here the record reveals factual disputes as to one of the key elements of Sempowich's prima facie case." *Id.*

As in *Sempowich*, *Haynes*, and *Loveless*, there is ample evidence in this case that Defendant viewed Mr. Whittaker's overall performance positively. Otherwise, Defendant would not have passed and certified Mr. Whittaker through all of his examinations. Also, as explained in Mr. Whittaker's opening brief, there are disputed facts regarding his performance during certain training drills that call into question Defendant's purported reason for Mr. Whittaker's termination. These disputed factual issues include 1) whether Mr. Whittaker was required to attach a breathing apparatus and failed to do so, 2) whether his performance during mazes was satisfactory, 3) whether he performed on ladders successfully, and 4) whether the alleged deficiencies in Mr. Whittaker's performance are true or accurate. *See* Appellant's Br. at 18-39.[2]

---

[2] For instance, Defendant's contention that Mr. Whittaker's performance during ladder drills was unsatisfactory is highly disputed. Mr. Whittaker never said he could not peform the ladder drills due to a fear of heights. Rather, he was naturally not yet comfortable on the extension ladders when first introduced, but then he became accustomed to them and mastered these ladder drills much faster than many of the younger trainees who were not terminated. JA0044-45. Yet, Defendant claims that "Mr. Whittaker cannot perform basic ladder drills because he is afraid of heights." Appellant's Br. at 78. But Defendant's own arguments refute this point. For each "struggle" Mr. Whittaker had with ladder climbing, Defendant concedes that Mr. Whittaker was able to complete each ladder drill. *See id.* If Mr. Whittaker's fear of heights was truly an

Notwithstanding Defendant's contrary contentions regarding Mr. Whittaker's performance, a dispute of fact still exists as to whether Mr. Whittaker met Defendant's legitimate expectations at that time because the evidence in the record suggests that Mr. Whittaker did perform satisfactorily. Because genuine issues of material fact exist as one of the key elements of Mr. Whittaker's prima facie case, summary judgment in this case was improper. *See Sempowich*, 19 F.4th at 650

### B. The District Court Also Erred In Holding That There Is No Genuine Dispute Of Material Fact As To Pretext

Contrary to the District Court and Defendant's assertions, there is evidence that the non-discriminatory reasons for Mr. Whittaker's termination are pretext, thus creating a genuine dispute of material fact.

"[T]o show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact." *Haynes*, 922 F.3d at 225. "Once the plaintiff offers such circumstantial evidence, *the case must be decided by a trier of fact and cannot be resolved on summary judgment*." *Id.* (emphasis added). Mr. Whittaker has shown pretext with his performance review, the contradictory evidence concerning his alleged insubordination, and Defendant's "discretionary" decision not to use its own

---

impediment, as Defendant asserts, Mr. Whittaker would not have been able to complete any ladder drill. The record shows that, although Mr. Whittaker did not pass his first ladder exam (which is common among trainees), he passed it on his second attempt and thereafter passed every ladder drill and successfully performed on the ladder. *See* JA0811-12; JA0044.

Demerit System. Each issue alone is based on disputed material facts that should have precluded summary judgment in this case.

### 1. Mr. Whittaker's Performance

Evidence of satisfactory performance to support a prima facie case may also serve as evidence of pretext. *E.g.*, *Sempowich*, 19 F.4th 643, 652 (observing that the plaintiff's prima facie evidence indicating that the reasons for the defendant's adverse employment decision against the plaintiff were false or inconsistent over time was also evidence of pretext). Here, Mr. Whittaker's evidence shows that Defendant viewed his performance as satisfactory. *See supra*, Section I.A.; *see also* Appellant's Br. at 4-6 (citing JA0041, JA0266; JA0984-89). Thus, Mr. Whittaker has demonstrated that the purported justification for Mr. Whittaker's termination is either inconsistent over time or false, thus constituting evidence of pretext and making summary judgment improper. *See Haynes*, 922 F.3d at 225.

### 2. Defendant's Changing Reasons for Termination

Additionally, Mr. Whittaker introduced other evidence that supports his assertion of pretext. "This Court has allowed an inference of pretext in cases where an employer has made substantial changes to its proffered reason for discharge over time." *Haynes*, 922 F.3d at 225; *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 576 (4th Cir. 2015) (reversing summary judgment in employer's favor

where "many of the purported justifications were not raised at the time of termination").

In *Haynes*, the defendant informed the plaintiff that his termination was due to job abandonment. *Id.* at 226. However, during the litigation, the defendant asserted "an entirely different reason for the termination than was offered initially: Haynes's poor attitude." Notably, the *Haynes* Court held that this change in the reason for the termination was evidence of pretext and further held that the district court erred in granting summary judgment on this basis. *Id.* The *Haynes* Court reasoned that "[w]hile an employer is certainly permitted to expand on its original reason for a termination, such evidence of substantial changes to [the employer's] proffered reason for the termination permits an inference of pretext." *Id.* Recently, in a case similar to *Jacobs* and *Haynes*, this Circuit reiterated "the fact that an employer has offered different justifications at different times for an adverse employment action is, in and of itself, probative of pretext." *Duvall v. Novant Health*, Inc., 95 F.4th 778, 791 (4th Cir. 2024) (noting that the supervisor's testimony on the reason for the plaintiff's termination was not the reason said to the plaintiff when he was terminated, and thus, the jury could view this is as evidence of pretext).

In addition to Mr. Whittaker's alleged incompetence (which is contradicted in the record), Defendant now asserts in this litigation that Mr. Whittaker was also terminated for "insubordination." *See* Appellee's Br. at 11-13, 20. As in *Jacobs*,

*Haynes,* and *Duvall*, Defendant's alleged justification of insubordination for Mr. Whittaker's termination was not raised at the time of Mr. Whittaker's termination. Indeed, Defendant's two internal memoranda—dated May 17 and May 18, 2018—that recommend Mr. Whittaker's termination contain no allegations of insubordination or that Mr. Whittaker refused to obey orders as the reason for his termination. *See* JA1193-94.[3] Moreover, neither memoranda—dated May 18 and May 24, 2018—informing Mr. Whittaker of his termination include or mention insubordination as a basis for his termination. *See* JA0982-93; JA1191-92.

Defendant's deposition testimony from its corporate designee also illustrates the change in Defendant's proffered reasons for Mr. Whittaker's termination. At deposition, Defendant's corporate designee was asked directly:

> Q: Why was Mr. Whittaker terminated?
> A: The failure to perform many tasks in
> stressful scenarios.
> Q: **Any other reasons?**
> A: **No, sir.**

JA1119 (emphasis added). Defendant's corporate designee later contradicted his own testimony by stating for the first time that insubordination was a reason or the reason for Mr. Whittaker's termination. *See* JA1121. This contradiction epitomizes a dispute regarding a material fact that should have been decided by the jury.

---

[3] In fact, the record shows that the claim of insubordination is based on two alleged events that are very isolated and does not comport with the remaining evidence in the record, *see* JA1011; JA1147, which further undermines Defendant's newly created reason for Mr. Whittaker's insubordination.

In *Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991), this Circuit reversed a grant of summary judgment in the defendants' favor where the plaintiff brought a civil rights claim against two police officers who allegedly injured him during a custodial interrogation. *Id.* at 90-91. In that case, the plaintiff's own deposition testimony put into issue whether the police officers did, in fact, beat him. *Id.* at 95. This Circuit observed that "such testimony is significantly probative; if believed by the jury, the testimony is dispositive." *Id.* The Court concluded that summary judgment in favor of the defendants was improper because "[w]hether or not [plaintiff's] testimony should be believed is a credibility determination that is not for us to make." *Id.*

Here, even putting aside Mr. Whittaker's own testimony or that of his numerous colleagues, the Defendant's own deposition testimony by its corporate designee casts doubt on whether Mr. Whittaker was actually fired for insubordination. This contradiction creates a genuine dispute of material fact, which can only be resolved with a credibility determination by the finder of fact and not by the District Court at the summary judgment stage. Instead, the District Court overlooked evidence that in favor of Mr. Whittaker and effectively viewed the evidence only in Defendant's favor, making summary judgment improper.

### 3. *Defendant's Demerit System*

As explained in Mr. Whittaker's opening brief, Defendant maintains a specific and detailed Demerit System for documenting infractions that might ultimately lead

to termination. JA1004. Yet, Defendant declined to use its own criteria, acted contrary to its own regulations, and opted for a brand new, never-before-published, subjective criteria to terminate Mr. Whittaker.

On this point, Defendant does not even respond to the authorities cited in Mr. Whittaker's opening brief.[4] Instead, Defendant simply contends that "the demerit system may be excluded at the discretion of the Assistant Chief of Education and Training" with a citation to its own training manual. Appellee's Br. at 30 (citing JA1006). Defendant appears to believe that because it has bestowed itself discretion, it is somehow insulated from judicial scrutiny. That is not the law.

To the contrary, Defendant opting to forego an objective demerit system in favor of "vague and chimerical reasons produced by subjective evaluation processes" is a decision that numerous courts, including this Circuit, have condemned. *E.g.*, *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1288 (4th Cir. 1985) (collecting cases); *see also Page v. Bolger*, 645 F.2d 227, 238 (4th Cir. 1981) ("An employer's reliance on the subjective judgment of individuals whose power to make an employment decision exists only by virtue of a flagrant disregard for mandatory anti-discrimination regulations cannot suffice as a legitimate non-

---

[4] *See* Appellant's Br. at 18 (citing *Wesley v. Arlington County*, 354 Fed. App'x. 775, 779-82 (4th Cir. 2009); *Arlicia Gosby v. Apache Indus. Servs.*, 30 F.4th 523, 528 (5th Cir. 2022); *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010); *Ford v. Berry Plastics Corp.*, No. RDB-12-0977, 2013 U.S. Dist. LEXIS 138948, at *37-39 (D. Md. Sep. 27, 2013)).

discriminatory reason for the action").

Thus, Defendant is mistaken in asserting that "[t]here is no evidential value for Mr. Whittaker in the Department's decision." JA0032. Defendant's failure to justify using subject criteria as the basis for Mr. Whittaker's termination is sufficient evidence to indicate pretext and, thus, raises a genuine issue of material fact as to the key elements of Mr. Whittaker's ADEA claim. *See Sempowich*, 19 F.4th at 650.

## C. Defendant Did Not Dispute At The District Court Level That Mr. Whittaker's Job Remained Open.

"Generally, issues that were not raised in the district court will not be addressed on appeal." *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605 (4th Cir. 1999). Defendant claims that it "argued below that Mr. Whittaker cannot establish the fourth element of the *McDonnell Douglas* test." Appellee's Br. at 24 (citing JA0025). Defendant's citation to JA0025 is highly misleading. That cite is page 12 of the District Court's Memorandum Opinion that outlines the elements of the *McDonnell Douglas* test and the parties' contentions and analyzes the third element of the *McDonnell Douglas* test of whether Mr. Whittaker met Defendant's legitimate expectations when he was terminated. There is no discussion about whether Mr. Whittaker's job remained open on this page or anywhere throughout the District Court's Memorandum Opinion because Defendant did dispute this element. Defendant's sleight of hand should not go unnoticed by this Circuit.

**D.    The District Court Erred in its Similarly Situated Analysis**

Defendant repeats the District Court's erroneous conclusion that Mr. Whittaker failed to produce evidence regarding the treatment of other similarly situated injured trainees. Appellee's Br. at 29-31 (citing JA0035). The District Court faulted Mr. Whittaker for allegedly failing to present "evidence that any other trainee was limited to desk duty by their evaluating physician during the course of training." JA0032. However, Mr. Whittaker *did* produce direct evidence from Trainee U, another younger employee who was also injured.[5]

Mr. Whittaker attached Trainee U's Physician Discharge Summaries as an exhibit showing that Trainee U was diagnosed with a significant injury that caused Trainee U to miss multiple training days and be restricted to desk work.   JA1020. Despite the more serious nature of Trainee U's injury (compared to Mr. Whittaker's knee bruise), Trainee U testified at deposition that Defendant never had Trainee U work at a desk at all, never revoked his books, and never prevented him from attending classes by confining him to the administrative building (all of which were

---

[5] Mr. Whittaker also put forth evidence showing another younger trainee, Trainee M., was treated more favorably than Mr. Whittaker with respect to the failure to a complete a maze during training. *See* Appellant's Br. at 24 n.3 (citing JA1009-10).  The District Court held, without any citation to legal authority, that Trainee M was not a suitable comparator because Trainee M eventually resigned.  *See* JA0032.  The fact that Trainee M. resigned is irrelevant.  The point is that Trainee M failed multiple times in training drills and received remedial training but was not terminated for these deficiencies whereas Mr. Whittaker only failed the maze once but was terminated for his alleged deficient performance.

done to Mr. Whittaker and more). *See* Pl.'s Response to Def.'s Mot. for Summ. J. at 29-30.

Conversely, Defendant treated Mr. Whittaker differently after he sustained an injury in late April—just one month before his termination. Defendant revoked Mr. Whittaker's student parking, prevented him from attending classes by completely confining him to the administrative building, would not permit him to use the elevator, required him to use the stairs (despite the alleged seriousness of his knee injury), would not allow him to enter the classroom to sit at a desk there and study, took away his books so he could not study, and would not let him observe anything occurring in the classroom or anywhere else the students were working or learning. JA0046. Even when Mr. Whittaker was permitted to return to class, Defendant kept him out of training drills for two days, causing him to miss instructions on ladders. *Id.* This is sufficient evidence to create a genuine issue of material fact. *Accord Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 299 (4th Cir. 2010) (reversing summary judgment in gender discrimination case where injured female plaintiff produced evidence that showed that injured male employees were treated more favorably, including being allowed to return to full duties despite doctor's orders only permitting to return to work with "light duty"). It is important to note again that Mr. Whittaker was passed and certified every step of the way, not under normal conditions but despite all these discriminatory restrictions.

Again, the District Court overlooked this direct contradictory evidence and "thus effectively viewed the evidence in the employer's favor." *Jacobs*, 780 F.3d at 576-77 (reversing grant of summary judgment where the district court overlooked that the record contradicted the employer's asserted reason for firing the employee). Based on this disputed fact, supported by direct evidence concerning Defendant's treatment of other similarly situated trainees, summary judgment in Defendant's favor was improper.

## II. MR. WHITTAKER PROVIDED DIRECT EVIDENCE BELOW THAT DEFENDANT HAS A CORPORATE CULTURE THAT IS AVERSE TO OLDER TRAINEES

Defendant incorrectly asserts that Mr. Whittaker has introduced a new argument on appeal regarding Defendant's corporate culture against older workers. *See* Appellee's Br. at 39. In addition to putting forth evidence before the District Court showing that Defendant treated younger employees more favorably, Mr. Whittaker also put forth evidence before the District Court that Defendant's employees made age-discriminatory comments, creating an ageist work environment. *See* Pl.'s Response to Def.'s Mot. for Summ. J. at 23-24. Mr. Whittaker calling these circumstances a "corporate culture" does not create a newly raised argument. *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) ("To survive summary judgment on the basis of direct and indirect evidence, Brinkley must produce evidence that clearly indicates a discriminatory

attitude at the workplace and must illustrate a nexus between that negative attitude and the employment action.").

The District Court viewed the age-discriminatory comments made by Defendant's employees in isolation rather than in totality. *See* JA0020-24. This was an error. *See Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 733 (4th Cir. 1996) (holding an age-related remark to be "insufficient to create a genuine issue of fact under the traditional scheme," but observing that "evidence of the weakness of [defendant's] nondiscriminatory reasons bolsters [plaintiff's] ambiguous affirmative proof," i.e., the age-related remark); *cf. Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 730 (4th Cir. 2019) (observing that "Westmoreland provided evidence to undermine TWC's proffered justification for terminating her, alongside evidence to suggest that its true reason was unlawful age discrimination" was sufficient evidence to satisfy her burden of proof). In *Tuttle v. Metropolitan Government of Nashville*—cited approvingly by this Circuit in *Westmoreland*—the Sixth Circuit concluded that evidence of a supervisor's "inconsistent testimony and statements," combined with "age-related statements" from peer employees (but not supervisors), sufficed to establish an inference of pretext. 474 F.3d 307, 320 (6th Cir. 2007).

Like the employees alleging age discrimination in *Burns*, *Westmoreland*, and *Tuttle*, Mr. Whittaker provided evidence to undermine Defendant's proffered justification for terminating him and evidence suggesting that the true reason was

unlawful age discrimination. Thus, Mr. Whittaker has offered sufficient evidence to satisfy his burden of proof at the summary judgment stage.

Even when viewed in isolation, the ageist comments made by Defendant's employees are sufficient evidence to satisfy his burden of proof to survive summary judgment.[6] For instance, the District Court concluded that Captain Welsh's comment referencing Mr. Whittaker's age did not establish direct evidence of discriminatory animus. JA0022. This is a direct and unambiguous age-related comment made by the employer's decision-maker and was delivered contemporaneously with Mr. Whittaker's termination. The timing and connection of these statements negate any possible assertion that they might be nonprobative, isolated remarks. *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 549 (4th Cir. 1995) (stating that there must be some "nexus . . . between the alleged discriminatory statements and any of the any of the employment decisions made by the [employer]").

The District Court also found that Captain Merson's Facebook post, *see* JA1028-35, in which he criticized a 51-year-old becoming a firefighter, does "not

---

[6] Relatedly, the District Court erred by applying the test from the Fourth Circuit's decision in *Bandy v. City of Salem, Virginia*, 59 F.4th 705, 711 (4th Cir. 2023) to the agist comments made by Defendant's employees. JA0020. *Bandy* was issued after the completion of the parties' summary judgment briefing, and thus, Mr. Whittaker was denied the opportunity to address the Bandy decision. *Id.* Nevertheless, as explained in this section, the age-discriminatory comments made by Defendant's supervisory-level employees satisfy the *Bandy* test.

refer to the plaintiff or the plaintiff's termination but rather concerns an article wholly unrelated to the plaintiff." JA0011. This conclusion is illogical. The District Court disregarded the fact that Captain Merson liked and replied to comments on his Facebook post that espoused age-discriminatory views. In his original post, Captain Merson stated that "it has nothing to do with a 51-year-old not being able to do the job" and "[t]here is no way a department or community will get the return on this employee." JA1028. In response to a person's comment about the possibility of an age discrimination lawsuit if the 51-year-old was not hired, Captain Merson responded that "You should not reach your 29th birthday by the beginning of the application process" and that "most that are hired at 50 won't make it to 20 years (70 years old)." JA1028; JA1035. Further, Captain Merson's deposition confirmed his ageist views with testimony stating that a "fire department would ***not be getting as great a return on their investment with a 45-year-old***." JA1198 (emphasis added). Notably, Mr. Whittaker was ***46 years old*** when Defendant hired him. JA0254-55. Thus, it cannot be said that ageist comments from an employer's decisionmaker regarding the appropriate age range for firefighters are "wholly unrelated" to Mr. Whittaker's ADEA claim. Captain Merson's Facebook post and comments "both reflect directly the alleged discriminatory attitude and that bear

directly on the contested employment decision." *Bandy*, 59 F.4th at 711.[7]

In any event, the record confirms that Captain Merson did not adopt his ageist way of thinking only after Mr. Whittaker was terminated. At deposition, Captain Merson confirmed he held these views in 2018, the same year Defendant terminated Mr. Whittaker. JA904-05. Thus, the District Court's repeated assertion that Captain Merson's occurred after Mr. Whittaker was terminated is another instance where the District Court overlooked direct contradictory evidence and "thus effectively viewed the evidence in the employer's favor," *Jacobs*, 780 F.3d at 576-77, making summary judgment improper.

In addition to Captain Merson's Facebook post and comments, the District Court also disregarded evidence in the record that shows that multiple supervisor-level employees voiced their age-discriminatory views, thus confirming a culture that is adverse to older employees. *See* Appellant's Br. at 43-44 (citing JA965, JA972-73, JA1031-38). To justify this exclusion of highly relevant evidence, the District Court relied on two out-of-circuit cases for the proposition that

---

[7] Defendant is incorrect in its assertion that "Mr. Whittaker presented no evidence that Captain Merson had any authority over the decision to terminate Mr. Whittaker." Appellant's Br. at 43-44. Captain Merson was one of two Administrative Captains (the other being Captain Redd, Mr. Whittaker's direct supervisor) to whom Mr. Whittaker's class reported. JA1202-04. Captain Merson oversaw "career development" and filled in for Captains Redd and Welsh for Mr. Whittaker's training class when needed. *Id.* Indeed, Captain Merson was the supervisor who completed and signed the "Employee Incident/Injury Report" form after Mr. Whittaker sustained a knee injury during training class. JA1024-25. Thus, Captain Merson was "a member of the committee with authority over the hiring process." *Bandy*, 59 F.4th at 711.

discriminatory comments made *after* an employee no longer works for the defendant have no bearing on the employee's discrimination claim. *See* JA0023-24 (citing *Clay v. UPS*, No. 13-2240-SAC, 2014 U.S. Dist. LEXIS 146920, at *20 (D. Kan. Oct. 15, 2014); *Moody v. U.S. Sec'y of the Army*, 72 Fed. App'x 235, 239 (5th Cir. 2003)). In addition to not being binding precedent, the cases upon which the District Court relied appear to be the minority view. At least four other circuits have allowed a plaintiff to rely on post-termination statements from an employer to show discriminatory intent when there is a specific nexus between the post-termination statement and the now-terminated employee.[8] This approach is consistent with the ADEA framework, which "recognizes 'that the question facing triers of fact in discrimination cases is both sensitive and difficult, and that there will seldom be eyewitness testimony as to the employer's mental processes." *Westmoreland*, 924 F.3d at 722. Accordingly, post-termination discriminatory remarks from former supervisory-level employees are highly relevant as they may shed light on the

---

[8] *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1241-42 (11th Cir. 2016) (holding various statements made by other employees before and *after* the adverse employment decision indicate that sex or gender-based bias was a motivating factor); *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620 (6th Cir. 2010) (reversing on summary judgment on race discrimination where plaintiff "corroborated accusations of patterns of discriminatory behavior, the post-termination comments of her former boss created a reasonable inference that the defendant's proffered reason for discharging was a pretext for discrimination); *Neufeld v. Searle Lab'ys*, 884 F.2d 335, 338, 340-41 (8th Cir. 1989) (considering post-termination statements where supervisor stated in a staff meeting one month after the plaintiff was allegedly terminated based on age that the supervisor's objective was to "get rid of" old people).

employer's mental processes when Mr. Whittaker was terminated.

In sum, Mr. Whittaker was not required to produce direct evidence as there is ample circumstantial evidence in the record to meet Mr. Whittaker's burden at this stage. The direct evidence of age discrimination by Defendant's employees, which the District Court impermissibly ignored, only further demonstrates that there are genuine issues of material fact regarding Mr. Whittaker's ADEA claim and that summary judgment should be reversed.

## CONCLUSION

When drawing all inferences in Mr. Whittaker's favor, he has provided sufficient evidence to contradict Defendant's proffered reasons for his termination. With all this evidence, a jury might ultimately conclude that age discrimination was the actual reason for the termination. Accordingly, the District Court erred and this Circuit should reverse the District Court's grant of summary judgment in favor of Defendant.

May 24, 2024                           Respectfully submitted,


                                       */s/ Abdullah H. Hijazi*
                                       Abdullah H. Hijazi
                                       HIJAZI & CARROLL, P.A.
                                       3231 Superior Lane, Suite A-26
                                       Bowie, Maryland 20715
                                       (301) 464-4646 (phone)
                                       (301) 464-4188 (fax)
                                       Ahijazi@hzc-law.com
                                       *Attorneys for Appellant*

# CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the type volume limitation imposed by Fed. R. App. P. 32(a)(7)(B) as the brief contains 5,826 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). The brief complies with the typeface requirements of Fed. R. App. P. 35(a)(5) as it was prepared using Microsoft Word and type face is Times New Roman, 14-point font. As permitted by Fed. R. App. P. 32(g), the undersigned relied upon the word count of a word-processing system in preparing this certificate.

*/s/ Abdullah H. Hijazi*
Abdullah H. Hijazi

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 24, 2024, a copy of the foregoing was filed to be transmitted via this Court's CM/ECF electronic filing system to all counsel of record in this matter.

*/s/ Abdullah H. Hijazi*
Abdullah H. Hijazi